*In re* MARRIAGE OF ROBERT CHESROW, Petitioner, and SANDI CHESROW, Respondent (Neil A. Robin, Appellant; Roger White, Appellee).

Second District   No. 2—93—0029

Opinion filed January 14, 1994.

Ilene E. Shapiro, of Chicago, for appellant.

Roger A. White, of Roger A. White & Associates, Ltd., of Lake Bluff, appellee *pro se.*

JUSTICE GEIGER delivered the opinion of the court:

Neil Robin (Robin), former attorney of respondent Sandi Chesrow in a dissolution proceeding, appeals from the order entered June 29, 1992, by the circuit court of Lake County, awarding attorney fees in the amount of $3,528.60 to Roger White (White), attorney for petitioner Robert Chesrow, and from the subsequent order entered September 8, 1992, denying Robin's motion to vacate the June 29 order. On appeal, Robin contends: (1) that the trial court abused its discretion in imposing a sanction against Robin; (2) that the attorney fees awarded did not constitute reasonable or necessary charges for the services rendered during the period in question; and (3) that the trial court abused its discretion in denying Robin's motion to vacate the judgment for attorney fees.

On August 12, 1991, petitioner, Robert Chesrow, and respondent, Sandi Chesrow, were involved in a dissolution proceeding in Lake County. On that date, the court set the matter for trial on December 9, 1991. Attorney Robin scheduled witness interviews and other trial preparation for December 4, 5, and 6. On December 2, Robin received a telephone call from Judge Terrence Brady, who was to preside over the trial. By means of a three-way telephone conference, the judge was also able to speak with attorney White. The judge disclosed to Robin that the judge was scheduled to take a skiing trip with White in January 1992. Judge Brady requested Robin and White to inform their clients of this fact and ascertain whether they would prefer the judge recuse himself from hearing the trial. On December 4, 1991, Judge Brady entered a recusal order, assigning the cause to Judge Bernard Drew and putting it on Judge Drew's trial call "of 3/9/91" at 9 a.m.

On December 9, 1991, White appeared before Judge Drew; Robin did not appear. At that time Judge Drew recused himself and reassigned the case to Judge Jack Hoogasian. On that same date, White appeared before Judge Hoogasian, who set the trial for December 12, 1991. Later that day, White faxed a letter to Robin informing Robin that Judge Hoogasian had set the cause for trial on December 12, 1991, at 9 a.m. White stated in his letter:

> "He [Judge Hoogasian] is efficient and decisive. I would expect the matter to go forward on that date."

On December 12, Robin and White appeared before Judge Hoogasian. Robin presented a petition to reschedule the case for trial. Robin's petition and his argument before the court were based on a clerical error Judge Brady had made on his recusal order wherein he had referred the cause to Judge Drew's trial call of "3/9/91." It was Robin's position that since March 1991 had already passed, he assumed Judge Brady intended to write "92" instead of "91" and that the case was actually set for trial on March 9, 1992. As a result of this belief, Robin had cancelled all trial preparation. Additionally, because the trial had been originally scheduled for December 9, 10, and 11 of 1991, Robin had scheduled other matters in Cook County for December 12 and 13. Also, he had scheduled himself for surgery on December 17 and anticipated needing a week for recovery.

Judge Hoogasian repeatedly interrupted Robin during his presentation of his position, stating that Robin had been informed that the cause was going to trial on this date and that he should summon his witnesses and be ready to proceed. Robin continued to stress his reliance on Judge Brady's clerical error as the attorney's reason for being unprepared to go to trial. At one point during the colloquy between Robin and Judge Hoogasian, the judge left the courtroom to confer with Judge Brady regarding the discrepancies in the trial dates. Judge Brady informed Judge Hoogasian that he (Brady) had "goofed" when he ordered the cause for Judge Drew's trial call on "3/9/91" and that he intended that it be taken up on the December 9, 1991, trial call.

A discussion ensued among Judge Hoogasian, Robin, and White. The judge determined that the trial should start the following day on December 13. Robin stated that he would not be ready because after receiving Judge Brady's order he had scheduled other matters for that date. Judge Hoogasian pointed out to Robin that Judge Drew's order dated December 4 set the instant matter for trial the "week of the 9th," that Robin should have inquired about the error in the trial date on that order, and that Judge Hoogasian's schedule would not al-

low him to reschedule the instant cause, as he was scheduled for trials through June 1992. The judge ordered Robin to be present for trial on the following day. Robin objected, saying that he could not be physically present. The court threatened Robin with incarceration if he did not appear and denied Robin's motion to reschedule the case on some date after December 13.

On the morning of December 13, Robin and White appeared before Judge Hoogasian at the beginning of his call. Robin announced to the court that his client, Sandi Chesrow, was answering not ready for trial because he had not had sufficient time to prepare her case. The attorney reiterated his request to continue the trial and once again based his request for a continuance on the clerical error in Judge Brady's order of December 4, 1991. Judge Hoogasian denied Robin's motion, stating that Robin had had a duty to investigate the faulty date.

The judge asked petitioner Robert Chesrow to call his first witness. Robin informed the court that he was leaving the courtroom and that he assumed the judge would hold his client in default for not being ready for trial.

The matter proceeded to trial, and at the conclusion of the proceeding Judge Hoogasian entered a judgment for dissolution of marriage. Subsequently, Robin filed a motion to vacate the dissolution judgment. On February 25, 1992, the judge granted the motion, stating that "substantial justice" required vacatur of the previously entered judgment. However, the judge ordered Robin to pay attorney White's fees for the time spent in court on December 13, 1991, and thereafter until February 25.

Robin filed a motion with Judge Hoogasian to vacate or reconsider his order directing Robin to pay White's attorney fees. In the meantime, White filed his petition for fees amounting to $4,028.60. On May 18, 1992, the judge denied the motion to vacate or reconsider and set White's fee petition for hearing on June 29, 1992.

On June 22, 1992, Judge Hoogasian was to conduct a hearing on Robin's motion to assess against Robin's client, Sandi Chesrow, the attorney fees previously assessed against Robin by the judge. Robin failed to appear on this matter, and Judge Hoogasian ordered Robin's motion stricken.

On June 29, 1992, Judge Hoogasian conducted a hearing on White's petition for fees. Robin failed to appear for the hearing. The judge found $3,528.60 in attorney fees to be fair and reasonable and entered an award in White's favor in this amount and against Robin. Also, on June 29 the judge heard the matter of Robin's previously

stricken motion to assess White's attorney fees against respondent instead of against Robin. As Robin also failed to appear on that motion, the judge denied the motion. On both orders of June 29 the judge specifically noted that Robin had failed to appear.

On July 17, 1992, Robin filed a motion to vacate the June 29 order assessing $3,528.60 in fees against him. Additionally, Robin sought vacatur of the order denying Robin's motion to assess the attorney fees against Sandi Chesrow rather than against him. Robin set forth in his motion that his failure to appear on June 29 was because he had left Illinois on June 27 to go to Colorado to be with a close friend who had been seriously injured in a bicycle accident. Robin averred that due to the severe nature of his friend's injuries he had been unable to return to Illinois until the evening of June 29. According to Robin's motion, he had directed his secretary to contact Roger White's office regarding Robin's inability to be at the hearing on White's fees. The court's June 29 order indicated that White's office had been contacted at 8:30 a.m. on that date.

On September 8, 1992, Robin filed a motion reiterating his prior request that the court assess against Sandi Chesrow and not against him the attorney fees awarded to White. On that same date, Judge Hoogasian denied this motion and Robin's earlier July 17 motion seeking a vacatur of the attorney fee award and the assessment of that sum against Robin instead of against Mrs. Chesrow. The judge denied both motions based on the fact that defendant had failed to appear on June 29 on either the matter of White's petition for fees or on the matter of assessing those fees against Robin's client. This appeal ensued.

Preliminarily, we note that the appellee, Roger White, has not filed a brief. Nevertheless, we decide the merits of the appeal because the record is simple, and we can easily decide the claimed errors without an appellee's brief. *First Capitol Mortgage Corp. v. Talandis Construction Corp.* (1976), 63 Ill. 2d 128, 133.

Robin first contends that the trial court abused its discretion in imposing White's fees as a sanction against Robin. Robin maintains that had the court granted his continuance when he appeared before the court on December 12, 1991, no default judgment would have been entered against Robin's client and, therefore, no subsequent sanction against Robin when the court eventually vacated the default judgment.

A litigant has no absolute right to a continuance; rather, the decision to grant or deny a motion for continuance is within the sound discretion of the trial court. (*Schnuck Markets, Inc. v. Soffer* (1991),

213 Ill. App. 3d 957, 982-83.) Supreme Court Rule 231(f) provides that no motion for a continuance shall be heard after the cause has been reached for trial unless a sufficient excuse is shown for the delay. (134 Ill. 2d R. 231(f).) The party seeking a continuance must provide the court with especially grave reasons for a continuance once the case has reached the trial stage because of the potential inconvenience to the witnesses, the parties, and the court. (*Rutzen v. Pertile* (1988), 172 Ill. App. 3d 968, 974.) A decisive factor in determining the propriety of the trial court's exercise of its discretion in ruling on a motion for continuance is whether the party seeking a continuance has demonstrated a lack of due diligence in proceeding with the case. (*Stern v. Stern* (1989), 179 Ill. App. 3d 313, 319-20.) On appeal, the trial court's decision to grant or deny a motion for a continuance will not be overturned unless the lower court abuses its discretion. *Martinez v. Scandroli* (1985), 130 Ill. App. 3d 712, 714.

The record shows that on August 12, 1991, Judge Brady set the matter of the Chesrows' dissolution of marriage for trial on December 9, 1991. By Robin's own admission at the hearing on his motion to continue, Robin set aside December 9, 10, and 11 of 1991 for the trial. He planned to interview witnesses and prepare for trial on December 4, 5, and 6.

On December 2, Judge Brady informed both Robin and White that he foresaw a possible basis for recusing himself from the case since he was scheduled to take a skiing trip with White in January. On December 4 Judge Brady entered a recusal order and assigned the cause to Judge Bernard Drew's trial call of "3/9/91."

On December 9, 1991, White appeared with his client before Judge Drew to answer ready for trial. Neither Robin nor his client appeared. Judge Drew recused himself and assigned the case to Judge Jack Hoogasian. White and his client then appeared before Judge Hoogasian, who set the matter for trial on December 12. Robin contends, here, that the December 12 date was chosen by White and the judge without any consideration of Robin's schedule. However, Judge Hoogasian stated on the record during the colloquy regarding Robin's motion to continue that he instructed White on December 9 to telephone Robin and to tell him that he was supposed to be in court. Robin made no response to this comment by the judge. The comment implies that White and the judge did attempt to get Robin to court before proceeding any further with the case.

The computer print-out sheet for December 9, which was produced by the court clerk during the motion-to-continue colloquy, showed that the Chesrow case was set for trial on December 9. Although Judge

Hoogasian could have gone ahead with the trial on that date, especially since that date had been originally scheduled as far back as August 12, he rescheduled the trial for December 12. Attorney White immediately informed Robin of this fact. After appearing before Judge Hoogasian on December 9, White faxed a letter on that same date to Robin informing him that Judge Hoogasian had set the matter for trial on December 12 at 9 a.m. Additionally, White wrote:

"He [Judge Hoogasian] is efficient and decisive. I would expect the matter to go forward on that date."

Nevertheless, on December 12 Robin appeared without his client or any witnesses and presented a motion to continue the case claiming that he was unprepared and that he had long ago scheduled other causes in Cook County for December 12 and 13. Robin maintained he was unprepared because he relied on the clerical error in Judge Brady's December 4 order to conclude that the case was not going to trial on December 9 as originally scheduled. Robin argued that since the order set forth the case was scheduled for Judge Drew's trial call on "3/9/91" and since that date had already passed, he assumed the error was in the year cited and that the matter had actually been scheduled for March 9, 1992. Having assumed this, Robin had ceased all plans for trial preparation and, consequently, was totally unprepared to go to trial on December 12.

Where a continuance is requested to permit preparation of a case, a court must evaluate all surrounding facts and circumstances. (*In re Tally* (1991), 215 Ill. App. 3d 385, 390.) The court, here, in denying Robin's motion to continue the case knew of the clerical error in Judge Brady's order but found that the error was not enough to convince it that Robin had demonstrated the degree of care expected of an attorney in such a situation. As the court stated, Robin had a duty to investigate the faulty date but did not. We agree.

Robin had known of the scheduled December 9 trial date since August 12, 1991. In fact, Robin acknowledged during his presentation of his motion to continue that he had been ready to go to trial since August. The dissolution case began in 1990. At the time of the hearing on his motion, Robin represented that his client had no money to live on. Despite this representation, Robin gave no indication that he had any complaint with the court's alleged act of not scheduling the cause for trial until March 9, 1992, three months past the original trial date of December 9. Robin's priorities should have been to speed the dissolution matter to resolution. Accepting a March 9, 1992, date would not have accomplished this task.

In addition to claiming that he was unprepared to go to trial on December 12 or 13, Robin stressed the impossibility of going forward with the trial on those dates. According to Robin, he had scheduled other causes in Cook County on those dates after the Chesrow matter had been originally set for trial on December 9, 10, and 11. Robin maintained that it was imperative that he appear on the Cook County matters. We note that in his motion to continue Robin sets forth that he had four different matters to present at 9:30 a.m. on December 12 in Cook County. However, at that time and until nearly 10:30 a.m. on that date Robin was present in Lake County before Judge Hoogasian. This fact implies indirectly that either he was able to reschedule the Cook County matters or he had a colleague handle them. Of course, the possibility also exists, as occurred here in the instant matter on December 9 and later on June 22 and 29, that the cases were called with no one appearing on behalf of Robin's clients.

Nevertheless, had Robin taken the simple precaution of investigating what the date should have read on Judge Brady's December 4 order, he would have learned that the instant matter was scheduled for Judge Drew's trial call on December 9. He could then have gone ahead with his initial plan of preparing for the trial on the days preceding that date. If the matter could not have gone to trial on December 9, Robin could have proposed December 10 and 11 as possible trial dates since he had originally allotted those dates for the Chesrow trial. If those dates had not been convenient to Judge Hoogasian, Robin would have at least appeared before the judge and demonstrated his diligence in resolving the dissolution matter.

By not inquiring as to the erroneous date on Judge Brady's order and by then not heeding White's admonishment that the case was likely to go forward on December 12, Robin left himself open for criticism by the court when he appeared unprepared before the court with a motion to continue. While Judge Hoogasian was less than patient during Robin's presentation of this motion, the judge did hear the motion and the explanation of the clerical error. The judge, however, stressed Robin's lack of diligence in checking on the faulty trial date and explained to Robin that the court's trial dates were already scheduled through June 1992. Based on these two facts beside the fact that the instant matter was a 1990 case, the court ordered the cause to trial on the following day, December 13. Under those particular facts and circumstances, we do not believe the court abused its discretion in denying Robin's motion for a continuance.

On December 13, Robin appeared before Judge Hoogasian answering not ready for trial because of insufficient time for trial prepa-

ration. Robin then left the courtroom without presenting respondent's case. The court took evidence from the petitioner and concluded the matter, in effect, entering a default judgment against Robin's client. On February 25, 1992, Robin appeared before the court on his motion to vacate the judgment.

The question regarding whether the court should set aside a default should be resolved as to do substantial justice between the parties with the idea in mind of carrying out, insofar as it is possible, the determination of matters upon their merits. (*Braglia v. Cephus* (1986), 146 Ill. App. 3d 241, 245.) In the instant case, the court ruled that substantial justice required that the dissolution judgment be vacated. The court found that Robin's client, Mrs. Chesrow, may have had a meritorious defense had she been allowed to present her case. The court recognized that punishing her for Robin's disobedience of the court's commands to be present and be ready to go to trial on December 13 was a drastic action. The court vacated the default judgment against her. However, in so vacating, the court ordered Robin to pay the attorney fees incurred by White on December 13, 1991, and thereafter until the current date, February 25, 1992. Robin maintains that this was an improper sanction.

■ It is Robin's position that the court's sanction was based upon the erroneous assumption that Robin's conduct caused the case to be delayed and upon the court's apparent prejudice against him. We have already determined that the trial judge did not abuse his discretion in denying Robin's motion for a continuance and that the judge did not act erroneously in assuming that Robin's conduct delayed the resolution of the dissolution case. Moreover, despite the judge's interruptions and sharp reprimands at the time of Robin's presentation of his motion to continue, we do not believe that the judge's denial resulted from any prejudice against Robin.

As to the court's sanction against Robin, a court may vacate a default judgment "upon any terms and conditions that shall be reasonable" (735 ILCS 5/2—1301(e) (West 1992)), and trial courts are empowered under section 2—1301(e) to impose attorney fee sanctions as a condition of vacating a default. (*Andreasen v. Suburban Bank* (1988), 173 Ill. App. 3d 333, 338.) In assessing against Robin the fees incurred by White from the time of the entry of the default judgment on December 13, 1991, until the date of the vacatur of the judgment on February 25, 1992, the court was acting in accordance with its express authority to condition the vacatur upon reasonable terms and conditions.

Accordingly, the trial court did not abuse its discretion in awarding attorney fees to White as a sanction against Robin.

Following the February 25, 1992, order directing Robin to pay White's attorney fees incurred on December 13, 1991, and thereafter until February 25, 1992, White filed his petition for fees and costs, amounting to $4,028.60. Robin filed an answer to White's petition denying the allegations therein regarding the attorney fees spent and the reasonableness of those fees. Robin also filed a motion to assess White's fees against Sandi Chesrow rather than against Robin. The record reveals that on June 22, 1992, a hearing was held on that motion but that Robin failed to appear. The matter again came before the court on June 29, with Robin once more failing to appear. Noting, in particular, Robin's absence, the court denied Robin's motion.

The record also shows that on June 29 the court conducted a hearing on White's petition for fees; Robin failed to appear. The court awarded $3,528.60 in fees to White, $500 less than the amount sought by White. Robin contends that the amount is not reasonable or necessary. Robin disputes the value of the services as well as the lack of detail in the services performed and the amount of time involved. At one point in his brief, Robin asserts that the defects in White's petition were not cured through the testimony of the attorneys. As Robin failed to appear at the hearing on the petition, we question his knowledge regarding the testimony presented at that hearing. Robin does state in his brief that he had a colleague appear on June 29 before the trial court to explain the circumstances regarding his absence at the hearing. However, we find no proof of that statement in the record. Neither the June 29 order nor Robin's own motion to vacate that order mentioned any appearance on Robin's behalf by a colleague. Mere assertions in a brief cannot serve as a substitute for a proper record. *In re Marriage of Partyka* (1987), 158 Ill. App. 3d 545, 557.

In petitioning the court for fees, an attorney is generally required to submit detailed time records; the attorney must itemize both the time expended and the work performed. (*In re Marriage of Waltrip* (1991), 216 Ill. App. 3d 776, 783.) White's petition met these basic criteria. While Robin has raised some questions regarding White's petition, there is no way for this court to determine if the trial court considered those questions in reaching its decision. There is no report of proceeding on this matter.

The record on appeal binds the parties and controls the court of review in its consideration of the appeal. (*Partyka*, 158 Ill. App. 3d at 557.) Where the record does not set forth all the evidence and facts upon which the trial court's actions were based, an appellate court is

required to assume that facts known to the trial court were sufficient to support the judgment. (*Wade v. Gentle* (1981), 101 Ill. App. 3d 1042, 1045.) We, therefore, must assume that the court had before it all the evidence it needed to determine a reasonable fee for White's services.

Nevertheless, Robin contends that the trial court abused its discretion when it failed to grant his motion to vacate the June 29 judgment for attorney fees. Robin maintains that he had a legitimate excuse for not appearing at the June 29 hearing on White's petition for fees. According to Robin's motion to vacate, serious injuries to a close friend necessitated his traveling to Colorado on June 27 to "visit" her. Robin asserted that due to the nature of her injuries he was unable to return to Illinois until 6 p.m. on June 29.

We note that there also is no report of proceedings or bystander's report of the September 8, 1992, hearing on Robin's motion to vacate the court's attorney fee award although Robin was present at that hearing. Despite Robin's assertions in his motion that he had a legitimate excuse for not being present on June 29 for the hearing on White's attorney fee petition or on Robin's own motion to assess those fees against Sandi Chesrow instead of against Robin, we have no record of what transpired at the September 8 hearing on the motion to vacate. We have only the court's order indicating that a hearing was conducted on the motion, that the court was fully advised in the matter, and that Robin's motion was denied because he was required to be present at the June 29 hearing on White's fee petition but did not appear. This order implies that the court heard Robin's excuse for not appearing on June 29 and found the excuse unacceptable.

The burden is on the appellant to furnish a record sufficient to support a claim of error, and, where the record is lacking, a reviewing court will indulge every presumption favorable to the order entered by the trial court. (*In re Marriage of Waltrip* (1991), 216 Ill. App. 3d 776, 784.) Any doubts arising from the incompleteness of the record will be resolved against the appellant. *Foutch v. O'Bryant* (1984), 99 Ill. 2d 389, 392.

Determining reasonable attorney fees is a matter within the sound discretion of the trial court, and absent an abuse of that discretion, its decision will not be disturbed. (*In re Marriage of Malec* (1990), 205 Ill. App. 3d 273, 285.) Without any record of either the June 29 or the September 8 hearing, we must presume that the trial court did not abuse its discretion and that the orders entered on those dates conformed with established legal principles and had a sufficient legal ba-

sis. (*Foutch*, 99 Ill. 2d at 392.) In light of the particular circumstances presented here, affirmance of the trial court's orders is warranted.

For the reasons stated, we affirm the judgment of the circuit court of Lake County.

Affirmed.

BOWMAN and DOYLE, JJ., concur.