In re MARRIAGE OF PHYLLIS WARD, Petitioner-Appellee, and REGINALD WARD, Respondent-Appellant.

First District (5th Division)    No. 1—94—3027

Opinion filed June 28, 1996.

1994). The neglect statute does not clearly require another meaning be given to the term "knowingly."

424

John J. Casey, of Hamblet, Casey, Oremus & Vacin, of Chicago, for appellant.

George S. Bellas and Thomas J. Mann, both of Bellas & Wachowski, P.C., of Des Plaines, for appellee.

JUSTICE COUSINS delivered the opinion of the court:

On November 6, 1990, Phyllis Ward (petitioner) filed a petition for dissolution of her marriage to Reginald Ward (respondent) based on the ground of physical cruelty. On September 20, 1993, the case was set for trial on December 9, 1993. On December 9, 1993, a representative of the law firm representing respondent appeared in court and requested a continuance due to the illness of the attorney handling respondent's case. The court denied the request and held the trial without the presence of respondent or his attorney. Respondent's attorney appeared in court after the prove up to object to the trial in his absence. On January 14, 1994, petitioner requested leave to amend the complaint to change the grounds sought from physical cruelty to irreconcilable differences. The trial court granted the leave to amend and issued a final judgment for dissolution of marriage, based on the December 9, 1993, hearing. The judgment stated, *inter alia*, that respondent's response to the original petition had been stricken for failure to attend a pretrial conference. The court also denied respondent's motions to set aside and vacate the judgment of January 14, 1994. Respondent appeals, contending that: (1) the court erred in refusing to grant a continuance; (2) the court erred in refusing to set aside the default judgment; (3) the court abused its discretion in awarding the bulk of the assets to petitioner and the bulk of the debts to the respondent; and (4) petitioner waived any advantage obtained from the default judgment by amending her petition.

BACKGROUND

Petitioner and respondent were married in Chicago on September

25, 1982, and they had one child during their marriage. Prior to this marriage, petitioner had one child. The proceedings in the case *sub judice* commenced on November 9, 1990, when petitioner filed a petition for dissolution of marriage based on physical cruelty. Respondent, on March 3, 1992, filed a response to the petition for dissolution of marriage.

On July 30, 1992, petitioner filed her first set of interrogatories and a request for production of documents. Respondent failed to answer the petitioner's discovery requests within 28 days. Therefore, on October 8, 1992, petitioner filed a motion to compel discovery compliance. When the case was called for status later that day, the court entered an order directing that all parties comply with outstanding discovery requests by the close of business on October 12, 1992.

Respondent filed answers to petitioner's first set of interrogatories on October 13, 1992. However, petitioner filed a rule to show cause alleging that respondent failed to produce relevant documents. At the next court hearing, based on the representations of respondent's attorney that all documents had been produced in response to the request for production, the court ordered respondent to file an affidavit of compliance no later than December 14, 1992.

On January 8, 1993, petitioner filed a second petition for rule to show cause. Petitioner based this petition on the fact that respondent had failed to comply with the court order requiring him to file an affidavit of compliance and to produce documents no later than December 14, 1992. At the hearing on the rule to show cause, the court granted respondent until January 28, 1993, to file a written response to the rule to show cause and postponed the hearing on this matter until February 3, 1993.

When the hearing on the rule to show cause resumed on February 3, 1993, the respondent still had not filed a written response. Also, Charles Snowden, the attorney for respondent, was unable to attend, and respondent was represented by one of Mr. Snowden's associates, who was not prepared to argue the rule to show cause. Therefore, the court sanctioned respondent and ordered him to pay the attorney fees incurred by petitioner.

On February 16, 1993, respondent tendered documents in response to petitioner's deposition notice. The respondent also tendered to the court an affidavit of compliance, which the court had previously ordered him to file by December 14, 1992. However, respondent never answered the petitioner's request for production of documents. As a further attempt to reduce future discovery problems, the court ordered respondent to appear for his deposition before March 6, 1993.

On March 9, 1993, the case was called for pretrial status. This date had been set by an agreed order that had been entered by respondent's attorney. However, respondent's attorney failed to show on this date. As a result, the court sanctioned respondent once again and required him to pay attorney fees.

In anticipation of the upcoming trial, petitioner filed a request to admit facts and genuineness of documents. This request was never answered by respondent. On March 17, 1993, petitioner filed another petition for rule to show cause relating to respondent's failure to appear for the pretrial conference. Petitioner supported this petition by citing that respondent failed to appear in court on several occasions, failed to produce documents in a timely fashion, and failed to appear for his deposition as ordered to by the court. Therefore, petitioner asked that the court strike respondent's response to the petition for dissolution of marriage.

On April 2, 1993, the court granted respondent until April 8, 1993, to file a written response to the latest petition for rule to show cause and set April 12, 1993, as the hearing date for the rule to show cause. On April 12, 1993, the court held a hearing on the rule to show cause. However, respondent's attorney was once again not present; he requested in a message to the court that he be allowed additional time to file responsive pleadings. The court again ordered respondent to pay attorney fees and ordered that the respondent's response to the petition for dissolution of marriage be stricken as a sanction.

On September 20, 1993, attorney Snowden was present in court when the court set the petitioner's petition for prove up for December 9, 1993, at 2 p.m. On October 12, 1993, the petitioner filed a second request for admission of facts. However, respondent never answered this request. The facts in this request included the market value of the marital residence and an apartment building owned by the parties along with outstanding mortgages on both properties.

On December 9, 1993, when the case was called for prove up at 2:15 p.m., respondent's attorney was not present. The court was informed that respondent had also failed to appear for the trial because attorney Snowden advised him that his attendance would not be necessary, inasmuch as attorney Snowden was ill and would obtain a continuance. The judgment order that the court entered on January 14, 1994, states that the court had received a phone call from the office of respondent's attorney stating that attorney Snowden had a back problem and could not appear in court. Thirty minutes after the case was scheduled to be called for prove up, William Richardson, another attorney from Snowden's law firm, the law

firm of record for respondent, arrived in open court. Richardson stated that attorney Snowden was unable to attend because of a back problem. Approximately five minutes later, the court was handed a copy of a facsimile transmission that had been received in the chief judge's chambers regarding the medical condition of attorney Snowden.

At this point, the trial court noted that the requirements of Illinois Supreme Court Rule 231 (134 Ill. 2d R. 231) were not satisfied due to the fact that the cause had been called for prove up and nothing was before the court to confirm the reasons for the continuance. After the court's decision to proceed, Richardson voluntarily removed himself from the courtroom. Petitioner then presented to the court her motion to amend the petition for dissolution of marriage to change the grounds from physical cruelty to irreconcilable differences and difficulties. The court granted petitioner's motion and the prove up proceeded under the amended grounds of irreconcilable differences. The court then heard the testimony of the petitioner, reviewed the documents presented, and ordered a judgment. Soon after this, attorney Snowden appeared in court to protest the trial court's decision to proceed with the prove up of petitioner's petition. The court refused to postpone the case, and attorney Snowden remained in court to receive a copy of the order entered on December 9, 1993. The record reveals that respondent never filed any pleadings relating to the prove up. The judgment, based on the evidence presented on December 9, 1993, was entered on January 14, 1993.

In the judgment, the trial court found that: (1) petitioner was a certified teacher with the Chicago Board of Education and was so employed until January 31, 1991, when she voluntarily gave up her teaching position in order to open a business known as The Children's House, Inc.; (2) respondent has been employed by the Chicago Board of Education for approximately 15 years and earns a gross monthly salary of $4,604.58 and has a net monthly income of $3,519.08 per month; (3) petitioner's pension with the Teacher's Pension Fund totaled $10,398.16; (4) respondent's pension with the Teacher's Pension Fund totaled $44,006.61; (5) petitioner and respondent, as joint tenants, owned the marital residence, which had a fair market value of $328,000, subject to a first mortgage with a principal balance due of $275,204.53, a second mortgage with a principal balance due of $9,684.86, a third mortgage with a principal balance of $5,773.20, and an equity of $37,000; (6) rental property owned by the respondent was subject to a first mortgage with the principal balance due of $87,000 and a second mortgage with a principal balance due of approximately $14,000, and the property had an appraised value of

$140,000 and equity of approximately $39,000; (7) marital property includes the stock of The Children's House, Inc, which in 1992, had a gross income of $270,000, and resulted in income to the petitioner of $16,800 (the outstanding obligations on the business totaled approximately $75,000 for unpaid federal withholding taxes and unpaid rents and the business has no value due to its outstanding debts); (8) petitioner owns a 1989 Mercedes automobile, subject to a chattel mortgage with a balance due of $24,000; (9) petitioner is indebted in the sum of $10,300; (10) respondent incurred liability on the second mortgage on the marital residence as a result of paying current obligations of the parties during the pendency of the action; and (11) respondent vacated the marital residence and took building materials valued at $3,000.

Based on these findings, the trial court held that: (1) petitioner and respondent were mutually barred from maintenance; (2) petitioner was awarded the marital residence subject to the first mortgage and the third mortgage; (3) respondent was responsible for paying the second mortgage of $9,684.86 on the marital residence; (4) respondent was awarded the rental property subject to both the first and second mortgages; (5) petitioner was awarded all of the interest in The Children's House, Inc., subject to all debts and obligations of the business; and (6) respondent was ordered to pay petitioner the sum of $3,000 for the building materials removed by the respondent at the time he vacated the marital residence.

Following the entry of judgment, respondent filed a petition to set aside and vacate the judgment of dissolution. In this petition, respondent asked the court to order that any and all of the marital assets be sold because it was the only method of ensuring equal distribution. Following this petition, respondent filed a *pro se* amended petition to set aside and vacate the judgment. On February 25, 1994, petitioner filed a response to respondent's petition. Respondent then retained counsel and filed a second amended petition to vacate the judgment, which the court denied. Respondent appeals. We affirm.

ANALYSIS

■ Petitioner initially contends that respondent's brief violates Supreme Court Rule 341 because it is argumentative and fails to present a fair and adequate rendition of the facts. Supreme Court Rule 341(e)(6) provides that the statement of facts "shall contain the facts necessary to an understanding of the case." 134 Ill. 2d R. 341(e)(6). Specifically, petitioner states that "[respondent's] entire Statement of Facts avoids mentioning everything that occurred in the three years between the filing of the Petition for Dissolution and

the entry of judgment. The result is a Statement of Facts which is argumentative and fails to inform this Court of precisely what went on in the underlying action." Relative to petitioner's contention, although the details of the events leading to the judgment of the dissolution may be lacking in respondent's statement of facts, the facts included are sufficient for us to consider the issues in the case. See *Bloomquist v. Ely*, 247 Ill. App. 3d 656, 661, 617 N.E.2d 474 (1993).

■ Petitioner further argues that respondent has failed to present a full and accurate record on appeal by not including certain pleadings, motions and orders. The burden rests on the appellant to provide a sufficient record to support the claim of error, and, in the absence of such a record, the reviewing court will presume that the trial court's order was in conformity with established legal principles and had a sufficient factual basis. *Foutch v. O'Bryant*, 99 Ill. 2d 389, 391-92, 459 N.E.2d 958 (1984); *In re Marriage of Martins*, 269 Ill. App. 3d 380, 387, 645 N.E.2d 567 (1995). However, even if the record on appeal is incomplete, courts have held that appellate review is not precluded where the record contains that which is necessary to dispose of the issues in the case. See *In re Marriage of Martins*, 269 Ill. App. 3d at 387; *People v. Hood*, 265 Ill. App. 3d 232, 239, 638 N.E.2d 264 (1994).

In the case *sub judice*, we note that respondent did fail to include certain pleadings, motions and orders in the record on appeal that are germane to the issues set forth in his brief. However, petitioner has supplemented the record with the missing documents, and we are presented with a more complete record on appeal. Therefore, the record is sufficient to dispose of the issues in the case, but we must resolve any doubts that may arise from any incompleteness of the record against the respondent. *Foutch*, 99 Ill. 2d at 392. We now proceed to consider the merits of this case.

## I

■ Respondent first contends that the trial court erred in refusing to grant a continuance on December 9, 1993, due to his attorney's illness. A litigant has no absolute right to a continuance; rather, the decision to grant or deny a continuance is within the sound discretion of the trial court. *Rutzen v. Pertile*, 172 Ill. App. 3d 968, 974, 527 N.E.2d 603 (1988); *Village of Maywood v. Barrett*, 211 Ill. App. 3d 775, 781, 570 N.E.2d 645 (1991). Supreme Court Rule 231(f) provides that no motion for a continuance shall be heard after the cause has been reached for trial unless a sufficient excuse is shown for the delay. 134 Ill. 2d R. 231(f). The party seeking a continuance must provide the court with especially grave reasons for a continuance

once the case has reached the trial stage because of the potential inconvenience to the witnesses, the parties, and the court. *In re Marriage of Chesrow*, 255 Ill. App. 3d 613, 618, 627 N.E.2d 416 (1994); *In re Marriage of Drewitch*, 263 Ill. App. 3d 1088, 1095, 636 N.E.2d 1052 (1994). Sickness of the trial attorney might be sufficient grounds for a temporary postponement. *Kehrer v. Kehrer*, 28 Ill. App. 2d 296, 299, 171 N.E.2d 239 (1960). A motion for continuance based upon the illness of a party must be supported by competent medical testimony stating the nature of the illness and the reasons why that party is unable to attend or participate in the trial. *Needy v. Sparks*, 51 Ill. App. 3d 350, 358, 366 N.E.2d 327 (1977). However, a decisive factor is whether the party seeking the continuance has shown a lack of diligence in proceeding with the cause. *Marshall v. Henning*, 91 Ill. App. 3d 180, 182, 414 N.E.2d 529 (1980); *In re Marriage of Chesrow*, 255 Ill. App. 3d at 618.

Respondent argues that he and attorney Snowden showed due diligence sufficient to warrant grant of a continuance. He cites *Bethany Reformed Church v. Hager*, 68 Ill. App. 3d 509, 386 N.E.2d 514 (1979), and *Reecy v. Reecy*, 132 Ill. App. 2d 1024, 271 N.E.2d 91 (1971), to support his contention. In *Bethany*, defendant requested a continuance due to his hospitalization, which the trial court denied. The appellate court reversed, noting that the one-month delay sought by the defendant was not onerously long, the delays occasioned by the defendant were minimal and they did not significantly delay the litigation. Also, the defendant advised the court by way of valid affidavits of the nature of the illness, the identity of his physician, the name of the hospital where he was confined, and a definite and reasonable time for the continuance. The court held that under these circumstances, either a continuance should have been granted or a mistrial declared, so that a trial could be commenced with the defendant present. *Bethany*, 68 Ill. App. 3d at 511-13.

Similarly, in *Reecy*, on the day of a hearing, the plaintiff's counsel filed an affidavit from his physician, stating that counsel was afflicted with influenza, had been treated for the illness before the date of the hearing, and should be confined to bed. The trial judge denied the motion for continuance and proceeded to an immediate hearing. The appellate court reversed, holding that the motion for continuance should have been granted because the record revealed no delays brought about by the plaintiff. *Reecy*, 132 Ill. App. 3d at 1027-28.

However, we believe that the instant case is analogous to *In re Marriage of Drewitch*, 263 Ill. App. 3d 1088, 636 N.E.2d 1052 (1994). In that case, the petitioner requested a continuance due to an "exacerbation of her illnesses." *In re Marriage of Drewitch*, 263 Ill.

App. 3d at 1090. The trial court denied the request, finding that the petitioner "had made a mockery of [the] Court" by repeatedly failing to appear in court and failing to comply with court orders. *In re Marriage of Drewitch*, 263 Ill. App. 3d at 1091. Furthermore, petitioner had waited mere days before trial to contact the respondent's attorney about her request for a continuance. Also, the trial court found petitioner to be "unbelievable." The appellate court held that, under these circumstances, the trial judge acted within his discretion when denying the petitioner's belated request for a continuance. *In re Marriage of Drewitch*, 263 Ill. App. 3d at 1095.

■ In the instant case, we agree with the petitioner and the trial court that respondent did not present a sufficient reason for the continuance. Respondent did not file a written motion for a continuance, nor did he present an emergency motion before the prove up began. Instead, attorney Snowden telephoned the court the morning of the prove up, stating that he had a back problem and could not appear in court. Although attorney Snowden informed respondent that he could not appear in court and advised respondent not to appear, Snowden did not inform petitioner or her attorney that he was not going to appear in court. Snowden never presented an affidavit concerning his illness. Also, he later appeared in court to object to the conduct of the trial in his absence. Furthermore, the record indicates that respondent manifestly lacked due diligence during the proceedings in this cause of action. Respondent had been granted previous continuances and failed to appear at prior court proceedings. Due to his failure to comply with discovery requests and court orders, the trial court sanctioned respondent three times and struck respondent's response to the petition for dissolution of marriage. Under these circumstances, we believe respondent's dilatory tactics and flagrant disregard of the court's orders delayed resolution of the dissolution case and taxed the court's patience. Therefore, we hold that the court did not abuse its discretion in denying respondent's request for a continuance.

## II

■ Respondent's second contention on appeal is that the trial court erred in refusing to set aside the default judgment. The Code of Civil Procedure provides that the trial court may, in its discretion, set aside any default, either before final judgment is entered or within 30 days thereafter. 735 ILCS 5/2—1301(e) (West 1992). The moving party has the burden of establishing sufficient grounds to vacate a default judgment. *Northern Trust Co. v. American National Bank & Trust Co.*, 265 Ill. App. 3d 406, 412, 637 N.E.2d 658 (1994). Although

the standard in reviewing the trial court's decision is whether that decision constitutes an abuse of discretion (*In re Marriage of Romashko*, 212 Ill. App. 3d 1018, 1024, 571 N.E.2d 995 (1991); *In re Marriage of Jackson*, 259 Ill. App. 3d 538, 542, 631 N.E.2d 848 (1994)), this court's overriding consideration should be "whether substantial justice is being done between the litigants and whether, under the circumstances of the case, it is reasonable to compel the other party to go to trial on the merits." *In re Marriage of Sheber*, 121 Ill. App. 3d 328, 334, 459 N.E.2d 1056 (1984). Whether substantial justice is being achieved is not subject to precise definition, but relevant considerations include the lack of diligence by the defaulter, the absence of a meritorious defense by the defaulter, the severity of the penalty resulting from the entry of a default order, and the relative hardships on the parties arising from a grant or denial of default. *Northern Trust Co.*, 265 Ill. App. 3d at 412; *In re Marriage of Romashko*, 212 Ill. App. 3d at 1024; *In re Marriage of Sheber*, 121 Ill. App. 3d at 334.

■ Respondent argues that the entry of the default judgment was too severe a sanction because he had a meritorious defense, namely, that many of the facts established in the *ex parte* hearing and incorporated into the judgment order were false and even fraudulent. Specifically, respondent asserts that the court erred in its valuations of the business, the rental property and the marital residence. In our view, these matters involved the use of the trial court's discretion, and we cannot say that the trial court abused its discretion. Respondent further maintains that petitioner's income tax return was fraudulent because it represented that petitioner owned 100% of the business, when, in actuality, respondent owned 51% of the business. However, respondent provides no proof for this assertion. We also believe that other assertions, such as discrepancies in respondent's age and length of employment service, are insignificant and inconsequential to the portion of the judgment regarding the distribution of the property.

Moreover, the numerous continuances and delays in trial of this matter occasioned by respondent's conduct throughout this litigation provide additional support for the trial court's denial of the motion to vacate. The trial court's decision was reasonably made to prevent further delays and expense in reaching an end to this litigation. Thus, in our view, respondent was not denied substantial justice. See *In re Marriage of Sheber*, 121 Ill. App. 3d at 334-36.

## III

■ Next, respondent contends that the trial court abused its

discretion in awarding the bulk of the assets to the petitioner and the bulk of the debts to the respondent. Section 503(d) of the Illinois Marriage and Dissolution of Marriage Act (the Act) governs the distribution of marital property. Section 503(d) provides:

"[The court] shall divide the marital property without regard to marital misconduct in just proportions considering all relevant factors, including:

(1) the contribution of each party to the acquisition, preservation, or increase or decrease in value of the marital and nonmarital property, including the contribution of a spouse as a homemaker or to the family unit;

(2) the dissipation by each party of the marital or non-marital property;

(3) the value of the property assigned to each spouse;

(4) the duration of the marriage;

(5) the relevant economic circumstances of each spouse when the division of property is to become effective, including the desirability of awarding the family home, or the right to live therein for reasonable periods, to the spouse having custody of the children;

\* \* \*

(8) the age, health, station, occupation, amount and sources of income, vocational skills, employability, estate, liabilities, and needs of each of the parties;

(9) the custodial provisions for any children;

(10) whether the apportionment is in lieu of or in addition to maintenance;

(11) the reasonable opportunity of each spouse for future acquisition of capital assets and income; and

(12) the tax consequences of the property division upon the respective economic circumstances of the parties." 750 ILCS 5/503(d) (West 1992).

See *In re Marriage of Nuechterlein*, 225 Ill. App. 3d 1, 8, 587 N.E.2d 21 (1992); *In re Marriage of Benkendorf*, 252 Ill. App. 3d 429, 433, 624 N.E.2d 1241 (1993). The touchstone of proper apportionment is whether it is equitable in nature, with each case resting upon its own facts. *In re Marriage of Vernon*, 253 Ill. App. 3d 783, 785, 625 N.E.2d 823 (1993). The proper division of marital property rests within the sound discretion of the trial court. *In re Marriage of Morris*, 266 Ill. App. 3d 277, 281, 640 N.E.2d 344 (1994); *In re Marriage of Thomas*, 239 Ill. App. 3d 992, 996, 608 N.E.2d 585 (1993). Discretion has been abused when no reasonable person could adopt the trial court's position. *In re Marriage of Thomas*, 239 Ill. App. 3d at 996.

■ Respondent argues that the trial court failed to address the

statutory factors in apportioning the marital property, resulting in petitioner receiving approximately 85% of the marital assets and respondent receiving approximately 15% of the marital assets. We disagree. The record reveals that the trial court based its distribution of the marital property on the factors set forth in section 503(d) of the Act. In summary, the court awarded the petitioner: the marital residence, with an equity of approximately $37,000 subject to the first mortgage and third mortgage; the business, which had a nominal value and resulted in an income of only $16,800; a 1989 Mercedes automobile with a balance due of $24,000; interest in her pension plan in the amount of $10,398; and $3,000 from respondent for items he removed from the marital residence. The court also found that petitioner was indebted in the sum of $10,300. The court awarded the respondent: the rental property with a net equity of approximately $39,000, subject to the first and second mortgages; his pension, valued at $44,006; and his automobile. The court found that respondent had a net monthly income of $3,519.08 and held him responsible for the second mortgage on the marital residence. The court also ordered him to pay $3,000 to the petitioner. In light of the disparity in net income between the parties and the fact that respondent did not have to pay maintenance to petitioner, we do not believe that the trial court abused its discretion in apportioning the property and debts. See *In re Marriage of Nuechterlein*, 225 Ill. App. 3d at 8-9.

IV

■ Lastly, respondent contends that, by continuing to seek discovery, and by amending her petition, petitioner waived any advantage she might have otherwise obtained from the court's striking of respondent's answer to the original petition. We disagree. Section 2—616 of the Illinois Code of Civil Procedure provides that "[a]t any time before final judgment amendments may be allowed on just and reasonable terms, *** changing the cause of action or defense or adding new causes of action or defenses, and in any matter, either of form or substance, in any process, pleading, bill of particulars or proceedings, which may enable the plaintiff to sustain the claim for which it was intended to be brought or the defendant to make a defense or assert a cross claim." 735 ILCS 5/2—616 (West 1992). If an amendment to a petition is substantive, the respondent must be afforded an opportunity to answer the amended complaint. See *Kiser v. Kiser*, 329 Ill. App. 23, 27, 66 N.E.2d 722 (1946). However, if the amendment is immaterial, respondent has no absolute right to file a new answer. See *American Pharmaseal v. TEC Systems*, 162 Ill. App. 3d 351, 359-60, 515 N.E.2d 432 (1987).

Respondent argues that he was prejudiced by the petitioner's amendment, which changed the grounds for divorce from physical cruelty to irreconcilable differences. We do not believe that the amendment was material in the instant case. The order striking respondent's response to the petition for dissolution of marriage was a sanction for a violation of discovery rules. Under such circumstances, the only paramount issues to be decided at trial related to the division of property and not to the basis of the divorce. See *Harris v. Harris*, 196 Ill. App. 3d 815, 824, 555 N.E.2d 10 (1990). Therefore, the issue of liability had already been established by the trial court's sanction and respondent was not prejudiced by the amendment.

For the reasons cited herein, the judgment of the circuit court of Cook County is affirmed.

Affirmed.

McNULTY, P.J., and GORDON, J., concur.