2024 IL App (1st) 230708-U

No. 1-23-0708

Third Division
October 30, 2024

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

_____

IN THE
APPELLATE COURT OF ILLINOIS
FIRST DISTRICT

_____

| | |
|---|---|
| LOYOLA UNIVERSITY OF CHICAGO, ) | |
| ) | |
| Plaintiff-Appellee, ) | Appeal from the Circuit Court |
| ) | of Cook County. |
| v. ) | |
| ) | No. 2021 M1 701604 |
| ONWARD MSO, LLC, and ANY AND ALL ) | |
| UNKNOWN OCCUPANTS, ) | The Honorable |
| ) | Robert F. Harris, |
| Defendants ) | Judge Presiding. |
| ) | |
| (Onward MSO, LLC, ) | |
| Defendant-Appellant). ) | |
| ) | |

_____

JUSTICE REYES delivered the judgment of the court.
Presiding Justice Lampkin and Justice Martin concurred in the judgment.

**ORDER**

¶ 1    *Held:*  The trial court's judgment is reversed, where the trial court abused its discretion in denying a continuance based on the illness of defendant's trial counsel immediately prior to trial. As the issue of possession has been rendered moot by the subsequent execution of the eviction order, the matter is remanded for a new trial to determine whether defendant is liable for past-due rent.

¶ 2    The instant appeal arises from a forcible entry and detainer lawsuit filed by plaintiff Loyola University of Chicago against defendant Onward MSO, LLC, a company which operated a

restaurant on the premises owned by plaintiff. Defendant's counsel had health issues during the proceedings, resulting in two continuances; after the second one, the trial court indicated that it would grant no further continuances and suggested that defendant retain additional or alternate counsel. Shortly before trial, defendant's counsel had a health emergency which was unrelated to his prior condition, which resulted in his hospitalization. The trial court, however, denied defendant's requests for a continuance and the matter proceeded to a jury trial. At trial, defendant was unable to present its case, as it was not represented by an attorney, and the trial court ultimately entered a directed verdict at the end of plaintiff's case. On appeal, defendant primarily contends that the trial court erred in (1) denying its requests for a continuance, (2) permitting the trial to go forward without defendant being allowed to present its case, and (3) denying his petition for rule to show cause, which was based on plaintiff's unilateral altering of the address on the premises in question. For the reasons that follow, we reverse and remand the matter for a new trial.

¶ 3                                  BACKGROUND

¶ 4                                    *Lease*

¶ 5        On March 22, 2017, plaintiff, as landlord, and defendant, as tenant, entered into a lease agreement for defendant's use of certain property owned by plaintiff; the lease was signed on behalf of defendant by Michael Olszewski, defendant's owner and sole member. According to the lease, plaintiff and Albion Hotel, LLC (Albion), had developed a six-story multiuse building "commonly known as 6566-90 N. Sheridan Road/1209 W. Albion Avenue, Chicago, Illinois." The building was vertically subdivided into four parcels, two owned by plaintiff and two owned by Albion. The lease provided that "[t]he premises to be leased to

2

Tenant consists of that portion of the Loyola Retail Improvements designated as 'Retail Space #A' and 'Retail Space #B' on the site plan attached hereto."

¶ 6　　The term of the lease was to begin on the "Rent Commencement Date," which was defined as the earlier of (1) the date that defendant opened for business to the public or (2) November 26, 2017, and was to extend for a period of 10 years. The lease provided for one year of rent abatement, with monthly rent payments of $10,000 commencing during the second year of the lease.

¶ 7　　Under the lease, defendant was to use the property solely for the operation of a sit-down restaurant, and was responsible for all work and improvements on the premises at its sole expense, which was estimated to be in excess of $1 million. Upon expiration of the lease, "[a]ll personal property, furnishings, machinery and trade fixtures, equipment and improvements that [defendant] install[ed] in the Premises [would] remain the property of [defendant]," and defendant would be responsible for removing such items from the property.

¶ 8　　Upon the commencement of defendant's rent payment obligation, defendant was required to pay rent on the first day of each calendar month. Past-due rent would incur interest charges, as well as a $200 late charge. The lease provided that a failure to pay rent which continued for five days after defendant's receipt of written notice from plaintiff would constitute a default under the lease. Under the lease, "[e]xcept for the payment of Rent," if either party was delayed or prevented from the performance of any of its obligations under the lease by, *inter alia*, an act of God, the period for its performance would be extended for a time equivalent to the period of such delay.

¶ 9　　On May 1, 2018, the parties amended the lease to confirm that the rent commencement date of the lease would be November 26, 2017, and that the lease term would extend to

November 25, 2027. The amendment further provided defendant with an additional month of rent abatement, through December 25, 2018 (*i.e.*, the first month of the second year of the lease term). Accordingly, defendant would first be required to pay rent in January 2019.

¶ 10                                              *Performance Under Lease*

¶ 11        The record reflects that defendant's restaurant opened on December 20, 2018. Defendant did not make a rent payment in January 2019, which was the first payment owed under the lease. Between February 2019 and January 2020, defendant made only 10 rent payments, totaling $100,000.

¶ 12        The restaurant was forced to close in March 2020 due to the COVID-19 pandemic and never reopened. Defendant did not make any rental payments after the restaurant's closure in March 2020.

¶ 13        On April 13, 2021, plaintiff sent defendant a notice of default, claiming that defendant's rent payment was in arrears in the amount of $169,889.84, and provided that defendant had until April 30, 2021, to cure the default before the lease would be terminated. Defendant did not make such a payment.

¶ 14                                                  *Complaint*

¶ 15        On May 4, 2021, plaintiff filed a forcible entry and detainer action against defendant, alleging that plaintiff was entitled to possession of "6850 North Sheridan Road" in Chicago, as well as $258,014 in unpaid rent for the period from September 1, 2019, through May 31, 2021; the complaint was later amended to change the subject address to "6580 N. Sheridan Road." Plaintiff also filed a motion for use and occupancy payments during the course of the litigation, which was granted in part; defendant, however, did not make any use and occupancy payments during the course of the proceedings.

¶ 16        On October 6, 2021, defendant filed an answer and affirmative defenses to the amended complaint, as well as several counterclaims. Defendant raised a total of 14 affirmative defenses, including (1) waiver, (2) novation, (3) estoppel, (4) fraud, (5) unclean hands, (6) setoff, (7) frustration of purpose, (8) impossibility of performance, (9) equitable rescission due to mutual mistake, (10) force majeure, (11) failure of consideration, (12) unjust enrichment, and (13) *laches*. Defendant also filed counterclaims for (1) breach of contract, (2) declaratory relief, (3) rescission, (4) reformation, (5) "money had and received," and (6) unjust enrichment. Defendant's claims were primarily based on his allegations that the COVID-19 pandemic had frustrated the purpose of the contract and had made it impossible to operate a sit-down, fine dining restaurant.

¶ 17        Plaintiff filed a motion to dismiss certain of defendant's affirmative defenses and all of his counterclaims pursuant to section 2-619 of the Code of Civil Procedure (Code) (735 ILCS 5/2-619 (West 2020)), claiming that they were not germane to the forcible entry and detainer proceedings. In December 2021, the trial court dismissed each of defendant's counterclaims, as well as four of his affirmative defenses (for setoff, equitable rescission, failure of consideration, and unjust enrichment), leaving defendant with 10 affirmative defenses.

¶ 18                                 *Pretrial Proceedings*

¶ 19        The parties proceeded to engage in discovery and other pretrial matters; as the various delays in pretrial proceedings are the subject of the instant appeal, we relate them in some detail. On May 2, 2022, the trial court entered an initial order setting the matter for a pretrial hearing on June 27, 2022, and setting a trial date of July 6, 2022; the matter was continued to June 9, 2022, for status on depositions.

¶ 20    On May 31, 2022, defendant filed a motion to extend the discovery schedule. Defendant claimed that Olszewski, defendant's owner and sole member, had been in a vehicular accident on April 9, 2022, which "left him in significant pain, and required protracted medical treatment, rendering him entirely unavailable to counsel for participation or consultation." Defendant therefore sought an extension of the discovery schedule by 45 days. In response, plaintiff expressed doubt on the claims as to Olszewski's health, noting that defendant had not raised the issue when the discovery schedule was initially set in early May and that Olszewski had participated in two site visits in late April and early May, during which he was walking and otherwise active without any medical devices. On June 9, 2022, the trial court extended the discovery schedule, setting a pretrial date of August 29, 2022, and setting the matter for trial on September 13, 2022.

¶ 21    On August 12, 2022, defendant filed a motion to continue the trial schedule, in which defendant's counsel, a sole practitioner, indicated that he was "presently amidst a personal health crisis, which has largely incapacitated him."[1] Counsel indicated that he had been "medically directed" to curtail his activities pending medical testing, and was scheduled for surgery on August 30, 2022. Counsel further represented that "[i]t is fully anticipated that with appropriate medical intervention, counsel's incapacitation will be sufficiently rectified to resume his normal schedule as soon as possible." Defendant accordingly requested that the trial schedule be continued for several weeks. On August 26, 2022, the trial court granted defendant's motion, setting a pretrial date of September 30, 2022, and setting the matter for trial on October 7, 2022.

---

[1] Defendant's filing did not reveal the nature of counsel's health issue, but the record on appeal indicates that it was related to a leg injury.

¶ 22    On September 22, 2022, defendant filed a second motion to reschedule the trial date, in which defendant's counsel indicated that he had surgery on August 30, 2022, "to address a catastrophic injury." Postsurgical rehabilitation, however, had rendered counsel "entirely homebound," and a reaction to anesthesia had left counsel with a "serious case of laryngitis." Counsel indicated that his surgeon had directed him to remain homebound until after his postsurgical evaluation, scheduled for October 19, 2022. Accordingly, defendant requested that the trial schedule be extended for another several weeks. On September 26, 2022, the trial court granted defendant's motion, setting a pretrial date of October 24, 2022, and setting the matter for trial on October 28, 2022. The trial court further ordered that "[d]efendant has 21 days to hire substitute or additional counsel, if he chooses. However, no further continuances will be granted." The order also provided that "[n]o further continuances will be granted if Defendant's counsel withdraws or additional and/or substitute counsel appears for Defendant."

¶ 23    On October 17, 2022, defendant filed an emergency motion to postpone the trial, in which defendant's counsel indicated that he "was literally just scheduled for emergency surgery tomorrow, October 18, 2022," and would be unable to conduct a trial on October 28, 2022. Counsel further indicated that "[c]ounsel will withdraw of necessity, which has become clearly necessary." Accordingly, defendant requested that the trial date be postponed.

¶ 24    At the October 24, 2022, pretrial date, the trial court expressed surprise that no counsel for defendant was present. Plaintiff's counsel indicated that a colleague of defendant's counsel had informed plaintiff's counsel that defendant's counsel was currently in the hospital. Olszewski, who was present, confirmed that his counsel was "rushed to the hospital Saturday"[2] and was currently hospitalized. The trial court examined its prior order of September 26, 2022,

---

[2] The "Saturday" referred to by Olszewski is presumably Saturday, October 22, 2022.

and recalled that defendant had received several continuances based on counsel's health; it further noted that, due to that fact, its prior order was "very clear that [the trial court] was granting the continuance, *** but [it] was also setting this for a final trial date." The trial court also advised Olszewski at that time that he should consider retaining additional or substitute counsel.

¶ 25    The trial court asked Olszewski if he had retained another attorney, and he responded that he was "in the process" of obtaining one, but requested an additional 21 days to find one. The trial court noted that it had previously given defendant time to retain new counsel, but Olszewski indicated that "what happened is [counsel] was fine. He had an emergency and he got rushed to the hospital." The trial court indicated that "[h]e hasn't been fine. *** [T]his is not the first time you've asked for a continuance based on his health." Olszewski responded: "He told me he was prepared and ready to go to court. We were all ready to go to trial and this came up. He was rushed to the hospital Saturday unbeknownst to him. I don't know what happened to the man. He really wanted to go." The trial court indicated that it was not going to allow defendant more time to find an attorney, and that "we are going to trial on the 28th." Olszewski objected, and the following colloquy occurred:

> "OLSZEWSKI: Can you give me three weeks—
>
> THE COURT: No, it's denied. I've given you more continuances than anybody.
>
> And I was—this is the precise reason why I instructed that you get either additional or substitute counsel by the 17th of October.
>
> This is the—precisely the reason why I gave that instruction. ***
>
> I'm not—
>
> OLSZEWSKI: Let me ask you this? Can I ask you this?

I'm speaking to my attorney, I said do we need another counsel, he goes, no, I'll be fine. We were prepared to go and he became ill unexpectedly. It's not—

THE COURT: No. No, it was expected. It could have been expected. He was ill before and that's why he asked for the continuance.

And at that point, he was not sure whether he would be able to do this case which is why I gave the specific instruction to obtain another lawyer.

OLSZEWSKI: Judge, he has a letter from his doctor from October 16th saying he was ready to go to trial.

He's got a letter from his physician saying [counsel] can resume his legal practice. He—

THE COURT: I think this is a circuitous conversation at this point. I've issued my ruling. I'm not giving anymore [*sic*] time. We are going to trial on the 28th."

¶ 26 The trial court then proceeded to conduct the pretrial hearing, granting plaintiff's pretrial submissions, as they had not been objected to by defendant, and noting that defendant had not submitted any pretrial materials but nonetheless permitting Olszewski to testify on defendant's behalf. Olszewski continued to object, claiming that counsel's previous health issues related to a broken leg which required surgery, but that "[t]his is an illness that's affecting him right now." The trial court ultimately denied defendant's motion, ordering that "[t]he in-person trial date of October 28, 2022, *** shall stand." The trial court further ruled on plaintiff's pretrial submissions and ordered that "if Defendant calls Michael Olszewski as a witness, Mr. Olszewski may testify."

¶ 27                                              *Trial*

¶ 28        A jury trial on the matter commenced on October 28, 2022. Olszewski appeared in court as representative of defendant, without counsel, and made an oral request for a continuance, which was denied. In addition to reiterating its prior opinion that defendant's counsel's absence was foreseeable, given his health history, the trial court also indicated that a continuance would mean that the trial would not be held until 2023, due to the court's schedule. The trial court further noted that it needed to "weigh the equities in this case," and that plaintiff was not receiving any rent for the restaurant during the pendency of the proceedings, notwithstanding the previous entry of a use and occupancy order.

¶ 29        The trial court additionally granted plaintiff's request that Olszewski not be permitted to participate in the trial, as he was not an attorney and was therefore unable to represent a corporate defendant. During the trial, the trial court informed the jury that "[t]he attorney for the defendant won't be here today," but introduced Olszewski as "representing the corporate entity that is the defendant on trial today." Olszewski was not permitted to speak during the trial, including presenting any evidence or challenging plaintiff's evidence. Plaintiff proceeded to present its case in chief and, after it had done so, moved for a directed verdict, which was granted.

¶ 30        The trial court entered an eviction order giving plaintiff possession of the property located at "6580 N. Sheridan Rd." and ordering defendant to vacate the premises by 11:59 p.m. on October 28, 2022. The trial court additionally entered a money judgment of $405,518.28 against defendant for rent owed to plaintiff.

¶ 31                                                  *Posttrial Proceedings*

¶ 32          On November 28, 2022, defendant, represented by new counsel, filed a motion to reconsider, arguing that it was entitled to representation of counsel at trial and that the trial court erred in denying defendant's motion for a continuance. Defendant also claimed that the trial court prejudiced defendant by indicating that Olszewski would be allowed to testify, then barring such testimony at trial. Finally, defendant contended that the eviction order was flawed, as it listed the incorrect address as the property address.

¶ 33          On December 14, 2022, defendant also filed a petition for rule to show cause, alleging that the lease agreement defined the subject premises as 6566-90 North Sheridan Road, not 6580 North Sheridan Road—the address on the eviction order—meaning that the eviction from the subject property was improper. The petition further alleged that plaintiff altered the property address on the building by changing the address posted on the awnings and doors. Attached to the petition were photographs of the awning of the restaurant, including an address of "6572," followed by the same awning with what appears to be stickers covering the existing address, changing it to "6580"; similar "6580" stickers are affixed to the door.

¶ 34          On December 22, 2022, plaintiff filed a "motion to increase judgment," seeking an additional $30,000 for rent accruing for November 2022, December 2022, and January 2023, as defendant's postjudgment motions had stayed the judgment until at least January 2023. Plaintiff also filed a petition for attorney fees and costs, which it alleged were permitted by the parties' lease.

¶ 35          The trial court ultimately denied defendant's motion to reconsider and petition for rule to show cause, and granted plaintiff's motion to increase judgment and petition for attorney fees.

The trial court awarded plaintiff an additional judgment for unpaid rent in the amount of $46,774.19, and awarded attorney fees of $24,334.50 and costs of $3208.08.

¶ 36    Defendant filed motions to stay enforcement of the order pending appeal before both the trial court and this court, which were denied. The record on appeal indicates that the Cook County Sheriff's Office effectuated the eviction on May 3, 2023.

¶ 37                                                    ANALYSIS

¶ 38    On appeal, defendant primarily contends that the trial court erred in (1) denying his motion for a continuance, (2) permitting the trial to go forward without defendant being allowed to present his case, and (3) denying his petition for rule to show cause, which was based on plaintiff's unilateral altering of the address on the premises.

¶ 39    As an initial matter, as noted, the eviction has been effectuated in this case, meaning that defendant no longer has possession of the subject property. Plaintiff thus claims that defendant's appeal is moot as to the issue of possession. An appeal is moot "if no actual controversy exists or when events have occurred that make it impossible for the reviewing court to render effectual relief." *Commonwealth Edison Co. v. Illinois Commerce Comm'n*, 2016 IL 118129, ¶ 10. A reviewing court will generally not decide a moot question, as "such a decision would essentially be an advisory opinion." *Id.*

¶ 40    Forcible entry and detainer actions are unique in that they are concerned with determining the right to possession "without the added complication of deciding unrelated matters." *Milton v. Therra*, 2018 IL App (1st) 171392, ¶ 23. As such, "the only factual questions that need to be answered in this type of proceeding are 'which party is entitled to immediate possession and whether a defense which is germane to the distinctive purpose of the action defeats [the] plaintiff's asserted right to possession.' " *Id.* (quoting *First Illinois Bank & Trust v. Galuska*,

255 Ill. App. 3d 86, 90 (1993)). Consequently, where the plaintiff has already regained possession of the property, our courts have regularly found that a challenge to an eviction order is rendered moot, as it is impossible to render effective relief to the appealing party. See, *e.g.*, *Circle Management, LLC v. Olivier*, 378 Ill. App. 3d 601, 607-08 (2007); *Said Iskan Investments, LLC v. Drew*, 2024 IL App (1st) 231707-U, ¶ 14.

¶ 41    In this case, therefore, to the extent that defendant's claims concern the possession of the property, such claims are rendered moot by the fact that plaintiff has regained possession of the leased premises. This, however, does not mean that defendant's entire appeal is moot, as the trial court's eviction order also included an award of monetary damages, in the form of past-due rent. See 735 ILCS 5/9-209 (West 2020) (permitting a claim for rent to be included in an eviction action); *Campana Redevelopment, LLC v. Ashland Group, LLC*, 2013 IL App (2d) 120988, ¶ 14 (a landlord may couple a claim for possession with a claim for unpaid rent). As this portion of the trial court's judgment was not rendered moot, defendant's challenge to the trial court's order remains properly before us and we may consider the merits of his arguments on appeal. See *Poulos v. Reda*, 165 Ill. App. 3d 793, 798 (1987) (while issue of possession was moot, the attendant claim for rent was "still a viable issue"); *Goolsby v. Thompson*, 2024 IL App (1st) 231686-U, ¶ 19 (same); *6103-07 Claremont, LLC v. Hunter*, 2024 IL App (1st) 231287-U, ¶ 29 (same).

¶ 42    Defendant's primary argument on appeal is his contention that the trial court erred in denying his requests for a continuance after his counsel was hospitalized shortly before trial. A litigant does not have an absolute right to a continuance. *K&K Iron Works, Inc. v. Marc Realty, LLC*, 2014 IL App (1st) 133688, ¶ 22. Instead, the decision to grant or deny a motion

for a continuance lies within the discretion of the trial court.[3] *Doe v. Parrillo*, 2021 IL 126577, ¶ 65. Accordingly, a reviewing court will not interfere with that decision " 'unless it has resulted in a palpable injustice or constitutes a manifest abuse of discretion.' " *K&K Iron Works*, 2014 IL App (1st) 133688, ¶ 22 (quoting *Wine v. Bauerfreund*, 155 Ill. App. 3d 19, 22 (1987)). A trial court, however, should not refuse to grant a continuance "where the ends of justice clearly require it." *Curtin v. Ogborn*, 75 Ill. App. 3d 549, 553 (1979). As such, "an appellate court can and should overrule a trial court's exercise of that discretion if it is not exercised judiciously." *Bethany Reformed Church of Lynwood v. Hager*, 68 Ill. App. 3d 509, 511 (1979).

¶ 43        Illness may serve as sufficient grounds for a continuance, even on the eve of trial. See, *e.g.*, *Bethany*, 68 Ill. App. 3d at 511 (trial court's denial of continuance reversed where defendant was hospitalized at time of trial). Specifically, as relevant to the instant case, the illness of a party's trial attorney may warrant a temporary postponement of the trial. *In re Marriage of Ward*, 282 Ill. App. 3d 423, 431 (1996). In this case, we agree with defendant that such a continuance should have been granted and that the trial court abused its discretion in denying defendant's requests.

¶ 44        First, despite plaintiff's—and the trial court's—suggestion otherwise, we do not find the delays caused by counsel's health to be particularly lengthy. In denying the request for a continuance at the pretrial hearing, the trial court indicated that "the first date [this case] was

---

[3] We note that there are certain circumstances in which the grant or denial of a continuance is expressly governed by rule or statute. See, *e.g.*, 735 ILCS 5/2-1007 (West 2022); Ill. S. Ct. R. 231 (eff. Jan. 1, 1970); Cook Co. Cir. Ct. R. 5.2 (July 1, 1976). The circumstances present in the case at bar do not fall within those categories and, accordingly, the trial court's decision was discretionary. See 735 ILCS 5/2-1007 (West 2022) ("On good cause shown, in the discretion of the court and on just terms, additional time may be granted for the doing of any act or the taking of any step or proceeding prior to judgment."); Ill. S. Ct. R. 183 (eff. Feb. 16, 2011).

in front of me was in June of 2021. Eviction proceedings are summary proceedings and should not linger for that long. This has been lingering and has been continued and dying *** and the continuances in your favor based on your request. And we are *** at the end of that road. I am going to proceed." The trial court continued, "based on *** the Court's schedule as well as the fact that this case should have been resolved some time ago, I'm going to deny any motion for a continuance by the defendant." A party's diligence in proceeding with the case is a relevant factor in determining whether to grant a continuance. *Ward*, 282 Ill. App. 3d at 431; see also *Meyerson v. Software Club of America, Inc.*, 142 Ill. App. 3d 87, 92 (1986). The trial court's statements, however, appear to hold defendant responsible for delays which were largely occasioned by the litigation process.

¶ 45    As relevant to the instant appeal, the original complaint was filed on May 4, 2021, and the first order entered by the judge ultimately presiding over the trial appears to have been entered on June 17, 2021, in connection with plaintiff's motion for leave to file an amended complaint. Plaintiff's amended complaint was filed on July 1, 2021. Defendant filed a motion to dismiss the complaint for failure to serve the statutorily-required five-day notice, and the parties engaged in briefing on the matter before the motion was ultimately withdrawn on August 20, 2021. Defendant filed its answer, affirmative defenses, and counterclaims on October 6, 2021. In response, on October 18, 2021, plaintiff filed a motion to dismiss several of defendant's affirmative defenses and all of its counterclaims. The parties engaged in briefing on the motion, which was granted by the trial court in two orders, dated December 14 and 17, 2021. Several status dates followed concerning discovery, at which both parties' attorneys were present. At the May 2, 2022, status, the trial court set the matter for trial for the first time, with a trial date of July 6, 2022. Prior to this time, the record reveals no motions for continuances or other

15

extensions of time by either party, apart from a single motion to extend the discovery deadlines filed by defendant in July 2021, which sought to defer the close of discovery until after the resolution of its then-pending motion to dismiss the complaint.

¶ 46    After the May 2, 2022, status date, defendant filed a motion to extend the current schedule, alleging that Olszewski had been injured in a vehicular accident, which prevented him from participating in the defense of the matter. Over plaintiff's objection, the trial court granted defendant's motion and extended the deadlines, including a new trial date of September 13, 2022.

¶ 47    On August 12, 2022, defendant—for the first time—filed a motion to continue the trial schedule based on the health of defendant's counsel. According to this motion, counsel was scheduled for surgery on August 30, 2022. On August 26, 2022, the trial court granted defendant's motion, setting a new trial date of October 7, 2022. On September 22, 2022, defendant filed a second motion to continue the trial schedule based on counsel's health, asserting that counsel had suffered postsurgical complications and that his surgeon directed him to remain homebound until after his October 19, 2022, postoperative evaluation. On September 26, 2022, the trial court granted defendant's motion, setting a new trial date of October 28, 2022, and making clear that "no further continuances will be granted." Defendant's October 17, 2022, emergency motion to postpone trial—and Olszewski's oral motions to the same effect on October 24, 2022, and October 28, 2022—followed and, as noted, were denied.

¶ 48    Examining the timeline of the litigation, then, defendant received two prior continuances based on counsel's health, with the trial court denying the third. The continuances resulted in the trial date moving from September 13, 2022, to October 28, 2022—slightly over six weeks.

While we agree with the trial court that eviction matters are summary proceedings which should be resolved quickly (see, *e.g.*, *Wells Fargo Bank, N.A. v. Watson*, 2012 IL App (3d) 110930, ¶ 14), we cannot find that a delay of less than two months is so egregious as to warrant proceeding to trial regardless of the circumstances. See *Bethany*, 68 Ill. App. 3d at 512 (finding that the defendant's prior continuances, amounting to a one-month delay in the trial date, were "minimal" and "did not significantly delay the litigation").

¶ 49    We also cannot agree with the trial court's characterization of counsel's illness as foreseeable, based on his prior health issues. The record indicates that counsel's prior continuances were based on an injury to his leg which required surgery, and which developed postsurgical complications. The record further indicates, however, that shortly prior to trial, counsel suffered an illness or other health event which was unrelated to his prior leg injury and surgeries, resulting in his hospitalization. While counsel's health was the common factor, we find the subsequent illness more similar to defendant's analogy of a vehicular accident than a mere continuation of counsel's prior problems, as the trial court apparently concluded. We therefore cannot find that the trial court's previous suggestion that defendant seek additional or substitute counsel is particularly relevant, as there is no indication that counsel would have otherwise been unable to appear as scheduled and, in fact, Olszewski indicated that counsel had received a clean bill of health from his physician shortly before he became ill.

¶ 50    We also find unpersuasive plaintiff's suggestion that defendant's claims as to his counsel's health were unsupported. A motion for a continuance on the basis of illness must generally be supported by competent medical testimony setting forth the nature of the illness and the reasons

why the individual is unable to participate in the trial.[4] *Ward*, 282 Ill. App. 3d at 431. In this case, plaintiff is correct that the specific health issues which led to counsel's absence at the time of the trial are not entirely clear from the record on appeal—indeed, while Olszewski indicated on October 24, 2022, that counsel had been "rushed to the hospital Saturday" (October 22), defendant's emergency motion to postpone trial, filed on October 17, indicated that counsel was "literally just scheduled for emergency surgery tomorrow, October 18, 2022." It is clear, however, that the trial court's decision to deny a continuance in the instant case was not based on a finding that the request was insufficiently supported, as it expressly acknowledged that it accepted that counsel was ill, and we cannot find that any lack of evidentiary support prevented the trial court from adequately considering the matter.

¶ 51    The report of proceedings from the October 24, 2022, pretrial hearing indicates that plaintiff's counsel was informed prior to the hearing that defendant's counsel had been recently hospitalized, which was corroborated by Olszewski's statements to the same effect once he appeared at the hearing. Olszewski additionally attempted to explain the nature of counsel's illness to the trial court, but the trial court indicated that "I'm not asking for a lowdown on his illness. I understand that he's ill." Subsequently, on the day of trial, the report of proceedings indicates that Olszewski attempted to hand the trial court a "medical report" from counsel's doctor for its review. Plaintiff objected to Olszewski submitting anything to the court, as he was not an attorney, and the trial court ultimately did not accept the document, indicating that it "kn[e]w" that counsel had been ill and that "I'm not asking for detail necessarily," but was only concerned with the question of whether the parties were ready for trial. We therefore

---

[4] We note that Illinois Supreme Court Rule 231 (eff. Jan. 1, 1970), requires an affidavit in support of certain motions for continuances. While a continuance based on illness is not specifically discussed within the rule, courts generally consider an affidavit to be "competent medical testimony" sufficient to support a motion for a continuance. See, *e.g.*, *Bethany*, 68 Ill. App. 3d at 513.

cannot find that the lack of documentary support in the record on appeal weighs against defendant's request for a continuance under the circumstances of the instant case, especially where the trial court was clear that it did not need—or want—such information.

¶ 52    In finding that a continuance should have been granted in the instant case, we cannot overlook the extreme prejudice which resulted from the denial of defendant's requests. Defendant is a limited liability company and, as such, is a legal entity distinct from its sole member, Olszewski. See 805 ILCS 180/5-1(c) (West 2020). Accordingly, as a corporate entity, defendant is required to be represented by a licensed attorney at all times and does not have the ability to proceed *pro se*. See *Downtown Disposal Services, Inc. v. City of Chicago*, 2012 IL 112040, ¶ 17; *Curet v. C&H Exterior Restorations, Inc.*, 2023 IL App (2d) 230030, ¶ 27. See also *City of Danville v. C.A. Collins Enterprises, LLC*, 2023 IL App (5th) 220345, ¶ 25 (a limited liability company must be represented by counsel). After the trial court denied the requests for a continuance, therefore, defendant was rendered powerless to defend against plaintiff's case; indeed, the report of proceedings from the trial indicates that Olszewski, as defendant's corporate representative, had no ability to participate in the trial at all. Thus, despite the fact that defendant had multiple defenses to plaintiff's complaint, defendant did not have the ability to (1) present any motions *in limine* or object to those submitted by plaintiff, (2) participate in jury selection, (3) cross-examine any of plaintiff's witnesses or challenge any of its evidence, (4) present its own evidence in support of its defenses, or (5) participate in a jury instruction conference. In short, defendant was essentially handcuffed from participating

in the trial, leading to a one-sided presentation to the jury which almost inevitably resulted in a directed verdict in plaintiff's favor.[5]

¶ 53 We recognize that the trial court has the ability to control its own docket (*Panos Trading LLC v. Forrer*, 2023 IL App (1st) 220451, ¶ 38), and that the trial court in the instant case was attempting to resolve a matter which had been pending for quite some time, while being cognizant of the fact that plaintiff had received no payment during the pendency of the proceedings. We nevertheless must conclude that the trial court's denial of defendant's request for a continuance in this case " 'resulted in a palpable injustice' " (*K&K Iron Works*, 2014 IL App (1st) 133688, ¶ 22 (quoting *Wine*, 155 Ill. App. 3d at 22)) such that reversal is warranted. Given the extremely harsh resultant consequences of the denial, the relatively modest length of the previous delays, and the fact that the request for a continuance was based on the sudden illness of counsel, we find that the trial court should have granted defendant's request and continued the trial, at a minimum, for the 21 days requested by Olszewski at the October 24, 2022, pretrial hearing to permit defendant to retain new counsel. Accordingly, we reverse the trial court's judgment in favor of plaintiff and remand the matter for a new trial on the issue of whether defendant is liable for past-due rent.

¶ 54 Based on our decision, we have no need to engage in extensive discussion of defendant's remaining issues on appeal. Defendant's arguments as to Olszewski's ability to testify and the award of attorney fees are necessarily obviated by the remand, as both concerned the initial trial proceedings. Similarly, defendant's arguments as to the propriety of the trial court's ruling on his petition for rule to show cause are no longer viable issues, as that petition was based on

---

[5] To be clear, defendant failed to comply with pretrial deadlines in this matter, which resulted in the trial court barring defendant from presenting any evidence other than Olszewski's testimony. This decision was not challenged by defendant on appeal, so we do not express any opinion as to its propriety.

the eviction order and, as explained, issues concerning the propriety of the eviction order were rendered moot once the eviction was effectuated.

¶ 55                                    CONCLUSION

¶ 56        For the reasons set forth above, we find that the trial court abused its discretion in denying defendant's requests for a continuance based upon its trial counsel's sudden illness. As the issue of possession has been rendered moot, we reverse the trial court's judgment and remand the matter for a new trial to determine whether defendant is liable for past-due rent.

¶ 57        Reversed and remanded.